**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC MALAKER, Individually and as Assignee of John Helfrich, | ) ) ) | |
| Plaintiff, | ) ) | No. 09 C 1140 |
| v. | ) ) | Hon. Amy J. St. Eve |
| THE CINCINNATI INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

The present case arises from an incident that occurred on November 6, 2000, between Plaintiff Eric Malaker and Defendant Cincinnati Insurance Company's insured John Helfrich. In March 2001, Defendant denied coverage to Helfrich because it determined that its insured had acted intentionally, such that Malaker's injury was not the result of an "accident." (R. 57 at 7.) It did not credit Helfrich's representation that, in seeking money that Malaker owed him, he inadvertently hit Malaker after he "slipped on a piece of white pipe on the floor." (*Id.* at 6-7.) The denial-of-coverage letter provided that, "should a lawsuit be filed in connection with this incident, please notify us of the suit immediately, so that we may review the wording of the suit for any possible coverage under your policy." (*Id.* at 7.)

In October 2002, Malaker sued Helfrich in Ogle County, Illinois. (R. 57 at 8.) John Lowry, who was Helfrich's counsel, "did not tender the tort lawsuit to [Defendant] because of the defendant's letter of March 13, 2001 to Helfrich that denied coverage." (*Id.*) In his answer, Helfrich admitted that, "on November 6, 2000, he grabbed Plaintiff's shirt and jacket with his

hand and pushed Plaintiff," and denied that Malaker "was injured to the extent claimed." (R. 98-1 at 1.)

On July 18, 2003, Malaker filed a second amended complaint against Helfrich, alleging assault and battery, as well as false imprisonment. (R. 57 at 8.) The state-court complaint alleged that Helfrich had grabbed Malaker by the chest, had thrown him against a door jam, and had then thrown him against a steel stud wall. (R. 1-6 at 2.) It further alleged that Helfrich stated words to the effect that "I'm going to take it out of your hide or you're going to pay, your [*sic*] gonna [*sic*] pay me you mother __, you're gonna [*sic*] pay." (*Id.*) Once more, Lowry did not tender the case to Defendant. (*Id.* at 9.) In his answer, Helfrich again admitted that, "on November 6, 2000, he grabbed Plaintiff's shirt and jacket with his hand and pushed Plaintiff" and denied that Malaker "was injured to the extent claimed." (R. 98-5 at 3.) He also admitted that "he was in the physical presence of the [p]laintiff" and that "he desired that the plaintiff pay him the disputed funds." (*Id.* at 4.)

Only on September 28, 2004, did Helfrich's attorneys allegedly notify Defendant of the lawsuit, stating in the relevant letter: "please advise as to your decision regarding coverage at your earliest convenience as the case now is in a posture to continue with discovery, including the depositions of the parties." (R. 57 at 9.) Defendant denies having a record of this letter and two others that Helfrich's attorneys supposedly sent subsequent to September 28, 2004. (*Id.*) Four years later, Malaker and Helfrich reached a settlement of the lawsuit, agreeing that $5.1 million was a reasonable sum to compensate Malaker. (*Id.* at 10.) The circuit court then entered an "agreed judgment order" in that amount, pursuant to which Helfrich made a partial payment of $100,000. (*Id.*) Helfrich has assigned his rights against Defendant to Malaker. (R. 65 at 1.)

Helfrich and Malaker agreed that the former would pursue the remaining $5,000,000 against Defendant. (*Id.* at 2.)

In the instant case, Malaker in his Complaint ("the operative Complaint") brings, individually and as Helfrich's assignee, claims of breach of contract, bad faith under Section 115 of the Illinois Insurance Code, and breach of fiduciary duty. (R. 57.) Defendant's motion to dismiss Malaker's breach-of-fiduciary-duty claim (R. 63) is currently before the Court.[1] For reasons explained below, the Court grants the motion.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Seventh Circuit recently explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002)). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Under federal notice-pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

---

[1] On January 31, 2011, the parties filed cross-motions for summary judgment. (R. 80; R. 84.) In light of its ruling in the instant order, the Court denies these motions for summary judgment as moot.

Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570); *see also Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (explaining that the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the relevant legal theory). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Justice v. Town of Cicero,* 577 F.3d 768, 771 (7th Cir. 2009) (holding that the court must construe the complaint in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor).

Beyond the requirements of Rule 12(b)(6), Rule 9(b) requires that a plaintiff plead all allegations of fraud "with particularity," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "The rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (internal quotations omitted). The Seventh Circuit recently reaffirmed its long-standing principle that a plaintiff subject to Rule 9(b) "ordinarily must describe the 'who, what, when, where, and how' of the fraud." *Pirelli Armstrong Tire Corp. Retiree Md. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011).

**ANALYSIS**

**The Complaint Fails to State a Claim for Breach of Fiduciary Duty**

Defendant moves to dismiss Plaintiff's breach-of-fiduciary-duty claim in Count II of the operative Complaint. Cincinnati claims that the alleged facts do not support a reasonable inference that a fiduciary relationship existed between Defendant and Helfrich. (R. 65 at 3-7.) As a result, Defendant argues, the Court should dismiss Count II. (*Id.* at *passim*.)

    A.    **The Notice-Pleading Standards of Rule 8 Apply**

As an initial matter, Defendant contends—and Plaintiff does not dispute—that breach-of-fiduciary-duty claims must meet the heightened pleading requirements of Rule 9(b). (R. 65 at 6-7; R. 72 at 7.) The Court disagrees. The underlying claim does not sound in fraud, but instead asserts Defendant's alleged failure to defend. (R. 57.) As such, Plaintiff need not meet the heightened-pleading requirements of Rule (9)(b). *See, e.g.*, *Jackson v. N'Genuity Enters.*, No. 09-CV-6010, 2010 WL 4628668, at *2 (N.D. Ill. Nov. 8, 2010) (observing that "claims of fiduciary duty are subject to the pleading requirements of Rule 9(b) only where the facts underlying the breach involve fraudulent conduct") (citing *Robison v. Caster*, 356 F.2d 924, 925 (7th Cir. 1966)); *Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Grp., Inc.*, No. 07-CV-2898, 2009 WL 466802, at *17 (N.D. Ill. Feb. 23, 2009) ("Breach of fiduciary duty is not among the special matters that must be pled with particularity under Rule 9(b)."). The Court therefore considers whether Count II of the Complaint satisfies Rule 8.

    B.    **The Law Governing Breach of Fiduciary Duty in Illinois**

In order to recover for a breach of fiduciary duty in Illinois, Plaintiff must prove the following elements: "(1) a fiduciary duty exists, (2) . . . the fiduciary duty was breached, and (3)

. . . such breach proximately caused the injury of which the plaintiff complains." *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010) (quoting *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000)).

Defendant correctly asserts that the insurer-insured relationship does not in itself give rise to a fiduciary relationship under Illinois law. *See, e.g.*, *Martin v. State Farm Mut. Auto. Ins. Co.*, 808 N.E.2d 47, 51 (Ill. App. Ct. 2004) ("[I]t is well settled that no fiduciary relationship exists between an insurer and an insured as a matter of law."). Nevertheless, a fiduciary duty "may arise as the result of special circumstances of the parties' relationship, where one party places trust and confidence in another, thereby placing the latter party in a position of influence and superiority over the former." *Id.* at 51. The Complaint does not allege any facts that support a reasonable inference that Helfrich placed his trust and confidence in Defendant in such a manner as to place the latter in a position of influence or superiority over him. (R. 57.)

Plaintiff does not argue otherwise. (R. 72.) Instead, Malaker submits that *Beatty v. Doctors' Co.*, 871 N.E.2d 138 (Ill. App. 5th Dist. 2007), distinguished *Martin* in a critical way. (R. 72 at 1-2, 5-7.) Specifically, *Beatty* clarified that "*Martin* did not address the duty of an insurer to the insured once the duty to defend has been triggered. This court has recognized that 'an insurance company has a fiduciary duty to defend its insured and to consider the insured's interest.'" *Beatty*, 871 N.E.2d at 145. On the basis of this material distinction, Plaintiff submits that "defendant's udty [*sic*] to defend was triggered when Helfrich told defendant's employee Hargrave that Helfrich accidentally fell into Dr. Malaker." (R. 72 at 6-7.) Malaker further contends that Defendant "breached this duty when it refused coverage." (*Id.* at 7.)

### C. A Duty to Defend Did Not Arise on December 8, 2000, When Helfrich Notified Defendant of the November 6, 2000, Incident

6

Plaintiff argues that Helfrich triggered Defendant's duty to defend by reporting the November 6, 2000, incident to "Andrew Hargrave, an employee of the defendant" on December 8, 2000. (R. 72 at 2.) Plaintiff further observes that Hargrave sent Helfrich a denial-of-coverage letter on March 13, 2001, which provided that, "should a lawsuit be filed in connection with this incident, please notify us of the suit immediately, so that we may review the wording of the suit immediately, so that we may review the wording of the suit for any possible coverage under your policy." (*Id.* at 3.) Due to this March 13, 2001, denial—Plaintiff contends—"Defendant breached this duty of utmost loyalty, and defendant put its own interests ahead of Helfrich's interests, when defendant determined the event of November 6, 2000 was the result of an intentional act by Helfrich and when defendant sent the March 13, 2001 letter refusing coverage." (*Id.* at 4-5.)

Plaintiff thus argues that the November 6, 2000, incident, and Helfrich's November 20, 2000, reporting of the same, triggered Defendant's duty to defend. This is not correct. Defendant's March 13, 2001, denial purported to be a denial of indemnity only. It explicitly required Helfrich to notify it immediately in the event of a lawsuit. This makes sense because, under Illinois law, the duty to defend is broader than the duty to indemnify. *See, e.g.*, *Keystone Consol. Inds., Inc. v. Emp'rs. Ins. Co. of Wausau*, 456 F.3d 758, 762 (7th Cir. 2006); *Pekin Ins. Co. v. Pulte Home Corp.*, 800 N.E.2d 466, 472 (Ill. App. Ct. 2003).

Plaintiff's argument would have merit only if it the Complaint's allegations supported the reasonable inference that it would have been futile for Helfrich to give further notice to Defendant after Malaker sued him. *See, e.g.*, *Caterpillar, Inc. v. Century Indem. Co.*, 2011 WL 488935, at *9 (Ill. App. Feb. 1, 2011) (citing *Davis v. United Fire & Casualty Co.*, 400 N.E.2d

7

984, 987 (Ill. App. 1980)). In *Davis*, the defendant insurer conducted an investigation of an accident and determined that it was outside the scope of the insurance policy. *Davis*, 400 N.E.2d at 986. The Illinois Court of Appeals explained:

> The insurer informed Davis . . . that it would provide no coverage for the accident. Given this action by the company, clearly indicating that it would provide no coverage, Davis may well have considered any further communication with the company futile. Given the company's conduct, an insured is justified in concluding that further communication and notice would be useless and the company will not be allowed to assert, as a defense, any failure by the insured to give such further notice. These circumstances fit within application of the general rule of equitable estoppel[,] which operates where an insured is misled to his detriment by an insurer's conduct.

*Davis*, 400 N.E.2d at 987. The present case is eminently distinguishable. The Complaint alleges that Defendant's March 13, 2011, letter stated: "should a lawsuit be filed in connection with this incident, please notify us of the suit immediately, so that we may review the wording of the suit for any possible coverage under your policy." (R. 57 at 7.) This letter was not a "blanket denial" and made abundantly clear that the insured should notify Defendant immediately upon the filing of a lawsuit. As a result, there is no "blanket denial" or similar representation that would justify Helfrich's declining to notify Defendant of the subsequent lawsuit. Nor does the letter support an inference that Defendant intended its insured not to give it notice of an ensuing lawsuit. *See, e.g.*, *Maniez v. Citibank, F.S.B.*, 937 N.E.2d 237, 245 (Ill. App. Ct. 2010) (observing that a party claiming equitable estoppel must establish "that the other person intended the party claiming estoppel would act upon the representations" and "that the party claiming estoppel reasonably relied on the representations to his or her detriment").

For this reason, Helfrich did not trigger Cincinnati Insurance Company's duty to defend by its letter of December 8, 2000.[2]

### D. The Court Cannot Find that Helfrich Failed to Notify Defendant in a Timely Manner and, Even if It Did Make Such a Finding, the Complaint Alleges that Defendant Failed to Bring Either a Declaratory-Judgment Action or to Defend under a Reservation of Rights

The allegations in the operative Complaint raise the question whether Defendant had a duty to defend at all. In particular, it is not clear that Helfrich notified Defendant of the lawsuits in a timely manner so as to trigger the duty to defend. *See, e.g.*, *Rossoff v. Cin. Ins. Co.*, 26 F. Supp. 2d 1095, 1101 (C.D. Ill. 1998) ("[T]he failure to timely notify the insurer of an occurrence relieves the insurer of any duty to defend or indemnify the insured."); *Fed. Ins. Co. v. Arthur Andersen L.L.P.*, 522 F.3d 740, 744 (7th Cir. 2008) ("Illinois requires an insurer to provide a prompt defense of the insured's demand or initiate a declaratory-judgment action . . . .") (citing *Emp'rs Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122 (Ill. 1999)); *Ehlco*, 708 N.E.2d at 143 (holding that an insurer has a duty to defend "if the insurer had 'actual notice' of the underlying suit. 'Actual notice' means that the insurer knows both 'that a cause of action has been filed and that the complaint falls within or potentially within the scope of the coverage of one of its policies.") (citing *Cin. Cos. v. W. Am. Ins. Co.*, 701 N.E.2d 499 (Ill. App. Ct. 1998)).

---

[2] Furthermore, Plaintiff does not establish that a duty to defend could arise prior to the filing of a complaint, without the allegations of which the insurer could not determine the existence of a duty by comparing them to the language of the insurance policy. The primary case upon which Plaintiff relies—*LaRotunda v. Royal Globe Ins. Co.*, 408 N.E.2d 928, 934 (Ill. App. 1st Dist. 1980)—held that an insurer could "also" rely on the results of its own investigation to determine whether "the claim was potentially within the policy's coverage." *LaRotunda*, 408 N.E.2d at 934. In that case, however, the insurer made the determination not to defend *after* the relevant plaintiff had filed a complaint. *Id.* at *passim*. Furthermore, and unlike the present case, the facts unearthed by the insurer's investigation in *LaRotunda* supported the "possibility that the exclusion did not apply." *Id.*

Nevertheless, the Court cannot find at this procedural stage that Defendant did not have a duty to defend on account of Helfrich's failing to notify it in a prompt manner. As the Supreme Court of Illinois recently pointed out, "[t]he timeliness of an insured's notice to its insurer generally is a question of fact for the trier of fact." *W. Am. Ins. Co. v. Yorkville Nat'l Bank*, 939 N.E.2d 288, 293 (Ill. 2010) (citations omitted).

Furthermore, it is well settled in Illinois that, if an insurer believes that it has received notice in an insufficiently prompt manner, it must either bring a declaratory-judgment action or defend under a reservation of rights. *See, e.g.*, *Santa's Best Craft, L.L.C. v. Zurich Am. Ins. Co.*, -- N.E.2d --, 2010 WL 5293369, at *5 (Ill. App. Ct. 2010) (citations omitted). The Complaint alleges that Defendant has failed to undertake either of these steps. (R. 57 at 10-11.) Subject to a crucial qualification discussed immediately below, were a jury subsequently to find that Defendant wrongfully denied coverage, it would also find that Defendant breached its duty to defend. *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1135 (Ill. 1999); *Santa's Best*, 2010 WL 5293369, at *5. In such an eventuality, Illinois law would estop Defendant "from later asserting any policy defenses to coverage, even if those defenses may have been successful in the absence of the breach." *Santa's Best*, 2010 WL 5293369, at *5 (citations omitted.)

### E. Defendant Did Not Have a Duty to Defend Because the Facts Alleged in the Relevant State Pleadings Do Not Fall Potentially Within the Relevant Policy's Coverage Provisions

The Illinois Supreme Court has explained that, although "[t]he general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the

10

insured[,] . . . Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend. . . . These circumstances include . . . where, when the policy and the complaint are compared, there clearly was no coverage or potential for coverage." *Wausau*, 708 N.E.2d at 1135. In the present case, the state-court complaints did not plead facts that plausibly triggered Defendant's duty to defend, such that Defendant's violation of the same would constitute a breach of fiduciary duty. *See Ismie Mut. Ins. Co. v. Michaelis Jackson & Assocs., L.L.C.*, 921 N.E.2d 1156, 1165 (Ill. App. Ct. 2009) ("Estoppel cannot be utilized in order to create coverage if none existed otherwise."). This conclusion follows from the Court's review of the state-court pleadings in the lawsuits filed against Helfrich by Malaker.

Although the operative Complaint does not allege facts pertaining to the specifics of the allegations in the prior lawsuit between Helfrich and Malaker, the Court can take judicial notice of the same. *See, e.g.*, *Ray v. City of Chi.*, 629 F.3d 660, 665 (7th Cir. 2011) ("[I]t is well established that district courts may take judicial notice of certain documents . . . when deciding motions to dismiss."); *Pugh v. Tribune Co.*, 521 F.3d 686, 691 (7th Cir. 2008) ("We may take judicial notice of documents in the public record . . . without converting a motion to dismiss into a motion fo summary judgment."); *see also Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010) ("Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment.").

Although it is clear that the Court can take judicial notice of a court filing, the matter is more complicated with respect to the substance of such a filing. Rule 201(b) provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1)

11

generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). As a result, the Court can take judicial notice of the fact of the state-court pleadings in the underlying lawsuit, but cannot take as true the matters asserted within them. *Accord ABN AMRO, Inc. v. Capital Int'l Ltd.*, No. 04-CV-3123, 2007 WL 845046, at *9 (N.D. Ill. Mar. 16, 2007) ("Typically, however, because of the indisputability requirement, the notice of a court order is limited to the purpose of recognizing the . . . litigation filing; judicial notice is generally not for the truth of the matters asserted in a court document.") (citations omitted).

To ascertain whether an insurer has a duty to defend, however, "the court must look to allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy, and if the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action." *Maxum Indem. Co. v. Gillette*, 940 N.E.2d 78, 82 (Ill. App. 2010) (quoting *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1079 (Ill. App. 1993)). Thus, it does not matter whether the allegations in the complaint are in fact true; the question is whether those allegations potentially fall within the insurance policy's coverage. As a result, the Court need only take judicial notice of the fact of the relevant state
pleadings.

The Seventh Circuit has recognized instances in which there is "no duty to defend because there wasn't even arguably coverage of . . . liability." *Guaranty Bank v. Chubb Corp.*, 538 F.3d 587, 593 (7th Cir. 2008). The Complaint provides that the Helfrich's insurance

12

contracts with Defendant only provided cover for "an accident." (R. 57 at 3-4.) There was no possibility, however, that Helfrich had coverage for the actions alleged in the state lawsuit that Malaker filed against Helfrich. The Second Amended Verified Complaint ("the state-court complaint") alleged that, "on November 6, 2000, [Helfrich] willfully, maliciously and wrongfully grabbed the plaintiff by the chest and threw him against a door jam; the defendant then threw the plaintiff against a steel stud wall." (R. 1-6 at 2.) The state-court complaint continued:

> [Helfrich] then stated words to the effect that "I'm going to take it out of your hire or you're going to pay, your [sic] gonna [sic] pay me you mother ___, you're gonna [sic] pay." [Helfrich] then struck the plaintiff in left ear with a closed fist. . . . [Helfrich] moved in the direction of the plaintiff in such a manner as to cut off retreat and stated to the plaintiff words to the effect "your [sic] not going to get out of here until you pay me what you owe" and "were [sic] not going to leave until you pay me what you owe"; and . . . the defendant moved in the direction of the plaintiff in such a manner as to cut off retreat and physically restrained the plaintiff's movement and liberty against his will."

(R. 1-6 at *passim*.) The facts alleged in this state complaint do not potentially fall within the policy's coverage provisions, which cover "accidents" and do not cover intentional acts.

Nevertheless, this may not in itself conclusively establish that Defendant had no duty to defend. In 2010, the Supreme Court of Illinois clarified that courts "may, under certain circumstances, look beyond the underlying complaint in order to determine an insurer's duty to defend." *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1019 (Ill. 2010).[3]

---

[3] *Pekin* did not purport to articulate a new principle of law, but instead clarified prior case law. *Pekin*, 930 N.E.2d at 1018-19 ("Thus, we disagree with Pekin that this court . . . intended to limit the source of an insurer's duty to defend 'solely' to the content of the underlying complaint in all cases.").

13

In *Pekin*, a plaintiff had brought an underlying action against Pekin Insurance Company's insured, Wilson, alleging causes of action for assault, battery, and intentional infliction of emotional distress. *Id.* at 1013. Wilson filed a counter-claim in which he alleged that he acted in self-defense. *Id.* at 1014. Pekin filed a declaratory-judgment action to the effect that it did not owe its insured a duty to defend. *Id.* at 1013. The relevant insurance policy had an intentional-act exclusion, which was in itself subject to self-defense exception. *Id.* at 1014. Pekin subsequently filed a motion for judgment on the pleadings, contending that it was clear from the underlying pleadings that it did not owe a duty to defend its insured. *Id.* at 1015. The trial court granted Pekin's motion because its policy did not cover the claims asserted in the complaint. *Id.*

The Illinois Supreme Court disagreed, rejecting the view that its prior case law "intended to limit the source of an insurer's duty to defend 'solely' to the content of the underlying complaint in all cases." *Id.* at 1018. The court concluded that a "circuit court may, under certain circumstances, look beyond the underlying complaint in order to determine an insurer's duty to defend . . ." *Id.* at 1019.

It is not clear that *Pekin* applies to this case, given that the latter concerns a motion to dismiss.[4] Nevertheless, even if the Court were to consider other pleadings in the underlying state lawsuit, it would still conclude that Defendant did not have a duty to defend. As noted above, Helfrich admitted in his state-court answers that, "on November 6, 2000, he grabbed Plaintiff's shirt and jacket with his hand and pushed Plaintiff," and denied that Malaker "was injured to the

---

[4] The Illinois Supreme Court couched its conclusion in terms of summary-judgment proceedings, noting that the cases upon which it relied involved such proceedings and pointing out that *Pekin* involved a motion for judgment on the pleadings, "which, as earlier stated, is like a motion for summary judgment . . ." *Pekin*, 930 N.E.2d at 1020-21. This case concerns Defendant's motion to dismiss.

14

extent claimed." (R. 98-1 at 1; R. 98-3 at 1; R. 98-5 at 3.) Given the admissions in the answer, an insurer that reviewed the state-court complaints and the answers thereto would not conclude that the incident was an accident as a matter of law. For that reason, Defendant did not have a duty to defend.

Plaintiff seeks to avoid this conclusion on the basis that Helfrich represented to Defendant, independent of the underlying state lawsuit, that "Helfrich slipped on a pipe and fell into Dr. Malaker, which negates the validity of any characterization of the incident as intentional." (R. 72 at 6.) Plaintiff does not cite any case law, however, that holds that such a representation by an insured—which is independent of any comparison of the pleadings in the underlying lawsuit and the insurance policy—triggers a duty to defend in itself.

Plaintiff further relies on *LaRotunda v. Royal Globe Ins. Co.*, 408 N.E.2d 928 (Ill. App. Ct. 1980), which held that "[t]he results of Royal Globe's own investigation may also be considered as unpleaded facts known to the insurer." *Id.* at 934. In this case, however, Defendant's investigation determined that the November 6, 2000, incident was not an "accident." This conclusion was bolstered by the subsequently filed lawsuit, the pleadings of which independently confirm that earlier determination. Furthermore, the Illinois Court of Appeals has distinguished *LaRotunda*, stating that the "true-but-unpleaded-facts" doctrine was not "meant to be applied to situations . . . where the only extraneous facts the insurer possessed were supplied by the insured." *Shriver Ins. Agency v. Utica Mut. Ins. Co.*, 750 N.E.2d 1253, 1259 (Ill. App. Ct. 2001.) *Shriver* explained: "Typically, in cases where the 'true but unpleaded facts' doctrine has been applied to show that an insurer had the duty to defend, the extraneous facts possessed by the insurer and known to be true were facts the insurer discovered during its

15

own investigation of the underlying action." *Id.* In the present case, of course, it was the insured who represented to the Defendant insurance company that the November 6, 2000, event was an accident.

Because there was not even arguably coverage, the facts alleged in the Complaint, coupled with those of which the Court takes judicial notice, make clear that Defendant did not have a duty to defend. *See, e.g.*, *Ismie Mut. Ins. Co. v. Michaelis Jackson & Assocs., L.L.C.*, 921 N.E.2d 1156, 1165 (Ill. App. Ct. 2009) ("The conclusion that an insurer has no duty to defend a case arises if, when the insurance policy and the complaint allegations are compared, 'there clearly was no coverage or potential for coverage.'") (quoting *Emp'r Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122 (Ill. 1999)). *See generally Lorenzo v. Capitol Indem. Corp.*, 928 N.E.2d 1274, 1278-79 (Ill. App. Ct. 2010) (observing that "[i]f any theory of recovery in the underlying complaint falls within the insurance coverage the insurer will have a duty to defend" and finding that "the allegations set forth in Lorenzo's complaint, compared with the relevant policy provisions, did not trigger Capitol's duty to defend or indemnify").

### F. Because Defendant Did Not Have a Duty to Defend, It Owed No Fiduciary Duty to Helfrich and so the Court Dismisses the Complaint with Prejudice

As Defendant did not have a duty to defend, no plausible inference arises from the Complaint that Defendant owed a fiduciary duty to Helfrich. *See Overbey v. Ill. Farmers Ins. Co.*, 525 N.E.2d 1076, 1084 (Ill. App. Ct. 1988) ("[I]n Illinois there is no fiduciary relationship between an insurance company and an insured. Absent a fiduciary relationship, there is no basis for a cause of action alleging breach of fiduciary duty.") The Court therefore dismisses Count II of the Complaint. Because any amendment would be futile, the Court dismisses the count with prejudice. *See, e.g.*, *Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 852 (N.D. Ill. 2003).

Count I of the operative Complaint is for breach of the relevant insurance contracts. (R. 57 at 11-13.) This Count alleges that "Defendant . . . wrongly determined the physical contact between plaintiff Malaker and Helfrich was the result of an intentional act by Helfrich" and that "Defendant's letter . . . that denied coverage under the CGL policy is a breach of the defendant's contractual obligations to defend and indemnify Helfrich under the CGL policy." (*Id.* at 12.) It further provides that "Defendant's failure to take any action regarding its coverage obligations under the Umbrella policy is a breach of defendant's contractual obligations to defend and indemnify Helfrich under the Umbrella policy." (*Id.*) Ultimately, the Complaint alleges that "Defendant's failure to pay to Malaker the judgment Malaker obtained against Helfrich, plus all accrued post judgment interest, and Helfrich's attorney's [*sic*] and expenses in the defense of the tort lawsuit, is a breach of the defendant's contractual obligations to defend and indemnify Helfrich under both the CGL and Umbrella policies." (*Id.* at 13.)

For the reasons explained above, comparing the relevant state-court pleadings in the underlying lawsuit to the pertinent insurance polices makes clear that Cincinnati Insurance Co. did not have duty to defend or indemnify Helfrich. Therefore, the operative Complaint fails plausibly to allege that Defendant's failure to defend its insured in the underlying state proceeding amounted to a breach of contract. The Court thus dismisses Count I of the operative Complaint. Because any amendment would be futile, the Court dismisses Count I with prejudice.

The operative Complaint's final count, Count III, is for "bad faith under the Illinois Insurance Code." (R. 57 at 15-16.) It alleges that Defendant's failure to obtain any of the documents filed in the tort lawsuit, to retract its refusal of coverage as expressed in its March 13,

17

2001, letter, to make any coverage determination under the Umbrella policy, and to defend or indemnify Helfrich under the CGL and Umbrella policies was "vexatious and unreasonable under the Illinois Insurance code, 215 ILCS 5/155 . . ." (*Id.*)  The operative Complaint concludes that "Malaker, as the assignee of Helfrich, is entitled to attorney fees, costs, and the other penalties set forth in Section 155 of the Insurance Code." (*Id.* at 6.)

Section 155 allows a court to award reasonable attorney fees, other costs, plus an additional amount subject to one of three limits where "it appears to the court that [the relevant] action or delay is vexatious and unreasonable . . ." 215 ILL. COMP. STAT. 5/155.  This lawsuit concerns "any action . . . against a company wherein there is in issue the liability of a company on . . . policies of insurance." *Id.*

It is well established that "[a] wrongful denial of coverage is not enough by itself to support liability under Section 155" and that "[w]hat is needed instead is some evidence indicating that the denial of coverage was unreasonable and vexatious." *Matsushita Elec. Corp. of Am. V. Home Indem. Co.*, 907 F. Supp. 1193, 1200 (N.D. Ill. 1995).  In the present case, the operative Complaint fails to state a claim because its constituent allegations, coupled with relevant pleadings of which the Court takes judicial notice, reveal that Defendant properly denied coverage.

Count III of the operative complaint thus fails to state a claim, and so the Court dismisses it.  Because it would be futile to amend Count III, the Court dismisses it with prejudice.

## CONCLUSION

For the preceding reasons, the Court dismisses the operative Complaint, with prejudice. The Court dismisses, as moot, the parties' cross-motions for summary judgment (R. 80; R. 84).

Dated: April 7, 2010

                        **ENTERED**

                        _____
                        **AMY J. ST. EVE**
                        **United States District Court Judge**